The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

AFSHAN KHOSRAVI, et al.,

Plaintiffs,

v.

MARCO RUBIO, et al.,

Defendants

NO. 2:24-cv-1227

**ORDER (1) GRANTING DEFENDANTS' MOTION TO DISMISS AND (2) DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

## I.    INTRODUCTION

This matter comes before the Court on (1) a Motion to Dismiss filed by Defendants Marco Rubio,[1] U.S. Secretary of State, and Robert Jachim, Acting Director of the Office of Screening, Analysis, and Coordination within the Bureau of Consular Affairs' Visa Service Office ("Defendants"); and (2) a Motion for Summary Judgment filed by Plaintiffs Afshan Khosravi, a U.S. citizen living in Washington, and her father, Hossein Khosravi, 80 years old, an Iranian national residing in Iran. Plaintiffs seek an order directing Defendants to adjudicate Mr. Khosravi's visa application. Defendants seek dismissal of Plaintiffs' claims. Having reviewed the

---

[1] Marco Rubio, successor to the original Defendant, Antony Blinken, as U.S. Secretary of State, is automatically substituted per Fed. R. Civ. P. 25(d).

ORDER GRANTING DEFS.' MOTION TO DISMISS AND
DENYING PLS.' MOTION FOR SUMMARY JUDGMENT

- 1

1  briefs and exhibits filed in support of and in opposition to these motions and the relevant caselaw,

2  the Court finds and rules as follows.

3                          **II.     BACKGROUND**

4          In June 2021, Plaintiff Afshan Khosravi initiated the process of obtaining immigrant visas

5  for her Iranian national parents so that they might travel to, and ultimately remain in, the U.S. for

6  the remainder of their lives. Am. Compl., ¶ 64. On November 3, 2023, Plaintiff Hossein Khosravi

7  and his wife (Afshan's mother), submitted their visa applications and were interviewed at the U.S.

8  Embassy in Ankara, Turkey. *Id*. Following the interview, the consular officer issued a visa to

9  Mrs. Khosravi, who proceeded to enter the U.S. and was granted U.S. permanent resident status.

10 *Id*., ¶ 65. However, Mr. Khosravi received a form advising him of the following:

11         A U.S. consular officer refused your visa application pursuant to section 221(g) of
           the U.S. Immigration and Nationality Act[2] for the reason or reasons selected
12         below. This constitutes a final adjudication of your visa application. However, this
           refusal may be overcome if missing documentation is provided and/or
13         administrative processing is concluded. *Id*., Ex. D.

14         The "reason or reasons selected below" provided, "Administrative Processing: We will

15 contact you by e-mail when your processing is completed." *Id*. Khosravi was instructed to submit

16 additional information within 20 days, "[b]efore we can continue processing your visa

17 application," and advised that "[l]ate responses may cause additional delays in processing your

18

19 [2] That section, codified at 8 U.S.C. § 1202(g), provides in relevant part "Nonissuance of visas or other documents.
   No visa or other documentation shall be issued to an alien if (1) it appears to the consular officer, from statements in
20 the application, or in the papers submitted therewith, that such alien is ineligible to receive a visa . . . under section
   1182* of this title, or any other provision of law, (2) the application fails to comply with the provisions of this
21 chapter, or the regulations issued thereunder, or (3) the consular officer knows or has reason to believe that such
   alien is ineligible to receive a visa or such other documentation under section 1182 of this title, or any other
22 provision of law." *Section 1182 enumerates several grounds for ineligibility, including health-related grounds,
   criminal grounds, and security grounds.

23 ORDER GRANTING DEFS.' MOTION TO DISMISS AND
   DENYING PLS.' MOTION FOR SUMMARY JUDGMENT

24

25   - 2

1    case." *Id*.

2        Mr. Khosravi submitted the requested information approximately ten days later, on or

3    about November 13, 2023. Am. Compl., ¶ 67; Ex. D. In response, the embassy sent him a

4    message stating "[w]e received your form(s). Case is currently in administrative processing. If we

5    need additional information, we will contact you again." *Id*. Since receiving this message,

6    Plaintiffs have not had word of any change in the status of Mr. Khosravi's visa application.

7    According to DoS's Consular Electronic Application Center ("CEAC") "Visa Status Check"

8    website, Khosravi's current application status is "Refused." *See*

9    https://ceac.state.gov/CEACStatTracker/Status.aspx (last visited 3/3/2025). Additional

10   information on that website provides, "[a] U.S. consular officer has adjudicated and refused your

11   visa application. . . . If you were informed by the consular officer that your case was refused for

12   administrative processing, your case will remain refused while undergoing such processing. You

13   will receive another adjudication once such processing is complete." *Id*.

14       Plaintiffs filed the instant lawsuit on August 12, 2024, approximately nine months after

15   Khosravi's final submission to the embassy. They allege that this delay has caused them "extreme

16   emotional and psychological harm due to the uncertainty of their family's future." Am. Compl., ¶

17   79. The Amended Complaint includes claims under the Administrative Procedures Act ("APA"),

18   5 U.S.C. §§ 706(1), 706(2)[3], and 555(b); and the Mandamus Act, 28 U.S.C. § 1361. Am. Compl.,

19

20   [3] Defendants have moved for dismissal of Count I, Plaintiffs' claim brought under § 706(2). *See* MTD at 12-13. That
     provision of the APA grants a court authority to set aside as arbitrary and capricious only a "final agency action."
21   Plaintiffs have not identified any "final agency action" (and in fact, as discussed below, have argued that the agency
     has *failed* to take a final action), and Plaintiffs do not address Defendants' argument for dismissal of Plaintiffs'
22   claim under 706(2). The Court takes this silence as a concession that it fails to state a claim, and accordingly,
     summarily dismisses Count I.

23   ORDER GRANTING DEFS.' MOTION TO DISMISS AND
     DENYING PLS.' MOTION FOR SUMMARY JUDGMENT

24

25   - 3

1   Counts I-III, ¶¶ 84-90; 91-109; 110-121. Plaintiffs seek an injunction or a writ of mandamus,

2   directing Defendants to adjudicate Mr. Khosravi's visa application, arguing that they have a

3   "mandatory duty" that they have not fulfilled, and that the 16-month (and counting) period since

4   the "refusal" constitutes an "unreasonable delay" prohibited under the APA.

5                              III.    DISCUSSION

6        **A. Standards on Motions to Dismiss and for Summary Judgment**

7            **1.  Motion to Dismiss**

8        A defendant may move to dismiss a claim that "fail[s] to state a claim upon which relief

9   can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint "must

10  contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

11  face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550

12  U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that

13  allows the court to draw the reasonable inference that the defendant is liable for the misconduct

14  alleged." *Iqbal*, 556 U.S. at 678. This standard is a "context specific task that requires the

15  reviewing court to draw on its judicial experience and common sense," *Iqbal*, 556 U.S. at 679,

16  and to "draw all reasonable inferences in favor of the nonmoving party." *Boquist v. Courtney*, 32

17  F.4th 764, 773 (9th Cir. 2022) (citations omitted). At Defendants' request, for purposes of

18  deciding this motion, the Court takes judicial notice of the government websites referenced in the

19  parties' briefing.

20          **2.  Motion for Summary Judgment**

21       Summary judgment is appropriate when the moving party has shown "that there is no

22  genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

23  ORDER GRANTING DEFS.' MOTION TO DISMISS AND
    DENYING PLS.' MOTION FOR SUMMARY JUDGMENT

24

25   - 4

1    Fed. R. Civ. P. 56(a). The moving party bears the initial "burden of proving the absence of a

2    genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010)

3    (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the moving party meets its burden,

4    the burden then shifts to the non-moving party to "designate specific facts showing a genuine

5    issue for trial." *Celotex Corp.*, 477 U.S. at 324 (quotation marks omitted). In deciding a summary

6    judgment motion, the Court must view the evidence in the light most favorable to the nonmoving

7    party and draw all justifiable inferences in its favor. *Messick v. Novartis Pharm. Corp.*, 747 F.3d

8    1193, 1199 (9th Cir. 2014) (citing *Scott v. Harris*, 550 U.S. 372, 378 (2007)).

9              **B.  Whether Plaintiffs State a Claim Under APA and/or Mandamus Act**

10         As noted above, Plaintiffs bring claims under the APA and the Mandamus Act. Because

11   "mandamus relief and relief under the APA are 'in essence' the same, when a complaint seeks

12   relief under the Mandamus Act and the APA and there is an adequate remedy under the APA, we

13   may elect to analyze the APA claim only." *Vaz v. Neal*, 33 F.4th 1131, 1135 (9th Cir. 2022)

14   (quoting *R.T. Vanderbilt Co. v. Babbitt*, 113 F.3d 1061, 1065 (9th Cir. 1997)); *see also Indep.*

15   *Mining Co. v. Babbitt*, 105 F.3d 502, 507 (9th Cir. 1997) (The Supreme Court "has construed a

16   claim seeking mandamus under the [Mandamus Act] 'in essence,' as one for relief under § 706 of

17   the APA.") (quoting *Japan Whaling Ass'n v. Am. Cetacean Soc'y*, 478 U.S. 221, 230 n.4 (1986)).

18         Under Section 706(1) of the APA, a court has authority to compel an "unreasonably

19   delayed" agency action, but "only if there is a specific, unequivocal command placed on the

20   agency to take a discrete agency action, and the agency has failed to take that action." *Vietnam*

21   *Veterans of Am. v. Cent. Intel. Agency*, 811 F.3d 1068, 1075 (9th Cir. 2016) (internal marks and

22   citation omitted); *see Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) ("[A] claim under

23   ORDER GRANTING DEFS.' MOTION TO DISMISS AND
     DENYING PLS.' MOTION FOR SUMMARY JUDGMENT

24

25   - 5

§ 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*."). Thus, a court may compel agency action under the APA when the agency (1) has "a clear, certain, and mandatory duty," and (2) has unreasonably delayed in performing such duty. *Plaskett v. Wormuth*, 18 F.4th 1072, 1082 (9th Cir. 2021); *see* 5 U.S.C. § 706(1). The Court addresses each issue in turn.

     **1.  Whether Defendants Have a "Clear, Certain, and Mandatory Duty" to Adjudicate Mr. Khosravi's Visa Application**

     **a.  Plaintiffs Have Identified Statutory and Regulatory Sources of a Mandatory Duty**

     The court finds that Plaintiffs have sufficiently alleged that Defendants have a "clear, certain, and mandatory duty" to act, rooted in two distinct statutory sources. First, Section 555(b) of the APA provides, in relevant part, that "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b); *see* Am. Compl., ¶¶ 37, 92. Second, the Immigration and Nationality Act ("INA") provides "[a]ll immigrant visa applications shall be reviewed and adjudicated by a consular officer." 8 U.S.C.A. § 1202. Implementing regulations further provide, "[w]hen a visa application has been properly completed and executed before a consular officer . . . the consular officer must issue the visa (or) refuse the visa." 22 C.F.R. § 42.81(a). As the Ninth Circuit has observed, under these provisions, "[a] consular office is required by law to act on visa applications." *Patel v. Reno*, 134 F.3d 929, 932 (9th Cir. 1997). The law imposes a non-discretionary duty to "review and adjudicate" such applications. *Id*.

     Defendants do not directly dispute that these statutes and implementing regulations impose on them a "clear, certain, and mandatory duty" to act, arguing only that they have fulfilled

ORDER GRANTING DEFS.' MOTION TO DISMISS AND
DENYING PLS.' MOTION FOR SUMMARY JUDGMENT

- 6

any such duty, as discussed further below. Myriad district courts (including many within the

Ninth Circuit) have concluded "that both the APA and State Department regulations create a clear

duty to adjudicate visa applications within a reasonable time." *Rashidian v. Garland*, No. 23-CV-

1187, 2024 WL 1076810, at *5 (D.D.C. Mar. 8, 2024); *see also R2 Technologies Corp. v. Rubio*,

2025 WL 436306, at *4 (D.D.C. Feb. 7, 2025) (agreeing with "the majority view" that "[i]ssuing

a final decision on a visa application is plainly a discrete agency action ... required by both the

APA and federal regulations"); *Sheikhalizadehjahed v. Gaudiosi*, No. 2:24-cv-1136 SCR, 2024

WL 4505648, at *7 (E.D. Cal. Oct. 15, 2024) ("Absent binding precedent, the Court is persuaded

that § 1202(b) imposes a non-discretionary duty to review and adjudicate visa applications.").

This court concludes that issuing a final decision on a visa application is a "clear, certain, and

mandatory duty" required by the APA and INA and implementing federal regulations.[4]

---

[4] The Court acknowledges that other courts have come to a different conclusion. Two such cases in this Western
District relied on *Karimova v. Blinken*, 2024 WL 3517852 (D.C. Cir. July 24, 2024), an unpublished decision from
the Circuit Court for the District of Columbia, which held under circumstances similar to those here that there is no
mandatory duty to "readjudicate" a visa application after a Section 1201(g) refusal. *See Beygi v. U.S. Dep't of State*,
No. 24-cv-504-TSZ, 2024 WL 4871377, at *2-3 (W.D. Wash. Nov. 22, 2024); *Hosseininejad v. Blinken*, No. 24-cv-
794-TSZ, 2024 WL 4858444, at *2 (W.D. Wash. Nov. 21, 2024). Several other courts within the Ninth Circuit,
however, have expressly rejected *Karimova*'s reasoning. *See, e.g., Daneshvar v. Blinken*, No. 8:24-CV-00838-FWS-
DFM, 2024 WL 5410448, at *5 (C.D. Cal. Nov. 21, 2024) (*Karimova* "is not binding, and the court finds it lacks
precedential or persuasive value to the case at bar."); *Maadarani v. Mayorkas*, 2024 WL 4674703, at *8 (E.D. Cal.
Oct. 31, 2024) ("The Court is not persuaded by Defendants' reliance on *Karimova*'s holding regarding § 555(b).
*Karimova* primarily relied on the Foreign Affairs Manual (FAM) to determine that an initial visa refusal constitutes
a final decision" but "the FAM "lack[s] the force of law" in the Ninth Circuit.") (citations omitted).

Indeed, several decisions issued by the District Court of the District of Columbia have expressly declined to follow
*Karimova*. *See, e.g., Hajizadeh v. Blinken*, No. CV 23-1766, 2024 WL 3638336, at *3 (D.D.C. Aug. 2, 2024)
("*Karimova* is an unpublished opinion, and 'a panel's decision to issue an unpublished disposition means that the
panel sees no precedential value in that disposition.' D.C. Cir. R. 36(e)(2). This court has considered *Karimova* but
declines to follow it."). Under *Patel*, and for the reasons articulated above, this Court concludes that the APA and
INA impose on Defendants here a clear, mandatory duty.

ORDER GRANTING DEFS.' MOTION TO DISMISS AND
DENYING PLS.' MOTION FOR SUMMARY JUDGMENT

- 7

1

**b. Defendants Have Not Fulfilled Their Mandatory Duty**

2      Finding that Defendants have a mandatory duty to adjudicate Khosravi's visa application

3  does not end the inquiry. Defendants argue that assuming a duty exists, they have fulfilled that

4  duty by reviewing Khosravi's application and issuing a "refusal." Whatever action on the

5  application they may take from that point on, Defendants argue, is merely discretionary and

6  therefore, not reviewable under the APA.

7      The Court disagrees, and finds that Plaintiffs have adequately alleged that Defendants

8  have not, to date, fulfilled the mandatory duty outlined above. While nominally "refused,"

9  Khosravi's application is, by most other indications, still in the adjudicative process. First, the

10  notice Khosravi received from the embassy does not comply with the regulations governing a visa

11  application refusal. Specifically, it does not appear to have been "signed and dated by the consular

12  officer," as required under 22 C.F.R. § 42.81(b), and it did not inform Khosravi, as further

13  required, "of any statutory provision of law or implementing regulation under which

14  administrative relief is available." Am. Compl., Ex. D; *see Patel*, 134 F.3d at 932 (failure to

15  comply with "refusal procedure" prescribed in 22 C.F.R. § 42.81(b) indicated consular officer's

16  action was not a refusal as required by law).[5] In addition, the message Khosravi received clearly

17  (and repeatedly) indicated that the application—while purportedly "refused"—was in fact still in

18

19      [5] *Patel*, the Ninth Circuit authority most relevant to the issues before the Court, was a mandamus action challenging
a consulate's unreasonable delay in processing plaintiff's visa application, the issue that is essentially raised in this
20  case. *Patel* is not entirely on point with the facts here, however. In *Patel*, the defendant conceded that after plaintiff
submitted her application, it was put "in abeyance," pending resolution of issues related to the plaintiff's eligibility.
21  134 F.3d at 932. The application at issue in *Patel* was not, as here, refused and then placed in "administrative
processing," which Defendants here argue constitutes a final adjudication. Thus, while *Patel* squarely held that a
22  "consular office is required by law to act on visa applications," it does not resolve the question of whether or not the
office has in this case met that requirement.

23  ORDER GRANTING DEFS.' MOTION TO DISMISS AND
DENYING PLS.' MOTION FOR SUMMARY JUDGMENT

24

25   - 8

1    process. *See* Am. Compl., Ex. D (stating "[w]e will contact you by e-mail when your processing

2    is completed" and requesting additional information "[b]efore we can continue processing your

3    visa application"). Further supporting the conclusion that the application has not actually been

4    adjudicated, as noted above, the CEAC "Visa Status Check" website clearly states that Khosravi's

5    visa application is currently "undergoing [administrative] processing" and that Khosravi "will

6    receive another adjudication once such processing is complete."

7    https://ceac.state.gov/CEACStatTracker/Status.aspx (last visited 3/3/2025).

8          As one district court in this circuit recently stated, "[r]ather than simply accepting the label

9    of "Refused," courts should consider "what is actually happening" in a specific case to determine

10   whether an agency has discharged its duty. *Momeni v. Blinken*, No. 2:24-CV-04879-ODW

11   (AGRX), 2024 WL 5112234, at *4 (C.D. Cal. Dec. 13, 2024) (joining "the prevailing position

12   among California district courts in holding that a soft refusal for administrative processing is not a

13   final decision, and therefore does not discharge an agency's mandatory non-discretionary

14   obligation to adjudicate a visa application."); *see also Mahonak v. Rubio*, No. 8:24-CV-01443-

15   FWS-DFM, 2025 WL 449044, at *14 (C.D. Cal. Feb. 10, 2025) ("[T]he initial refusal of

16   Plaintiffs' visa applications pending 'administrative processing' did not discharge [defendant's]

17   duty because there was no final adjudication."); *Hassan v. Dillard*, 2024 WL 4979476, at *5 (D.

18   Minn. Dec. 4, 2024) ("Simply describing the decision as final does not make it so."); *Aminzadeh*

19   *v. Blinken*, 2024 WL 3811153, at *4 (C.D. Cal. Aug. 9, 2024) ("The mere fact that the

20   Department has chosen to characterize this action as a "refusal" does not necessarily make it a

21   final decision; 'the focus should be on what is actually happening[.]'") (citing *Vulupala v. Barr*,

22   438 F. Supp. 3d 93, 98 (D.D.C. 2020)). This conclusion is consistent with Ninth Circuit authority

23   ORDER GRANTING DEFS.' MOTION TO DISMISS AND
     DENYING PLS.' MOTION FOR SUMMARY JUDGMENT

24

25    - 9

1    holding that "[a] consular office is required by law to act on visa applications," and for a refusal

2    to comply with these requirements it must be a "final decision." *Patel*, 134 F.3d at 932 (citing 8

3    U.S.C. § 1201(g) (INA § 221(g)).

4         Again, the Court acknowledges that courts have come to opposing conclusions on this

5    issue. *See supra*, n. 4 and cases cited therein. However, the "majority view"—and the more

6    persuasive one—is that the initial refusal of a visa application pending "administrative

7    processing" does not discharge the consular duty to adjudicate a visa application. *See R2*

8    *Technologies Corp.,* 2025 WL 436306, at *4 (D.D.C. Feb. 7, 2025) (agreeing with "the majority

9    view" that a provisional refusal pending administrative processing is not a final decision); *Alam v.*

10    *Blinken,* 2024 WL 4804557, at *5 (E.D. Cal. Nov. 15, 2024) ("[The prevailing position among

11    district courts is that a refusal for administrative processing is not a final decision and therefore

12    does not discharge the agency's obligation to adjudicate visa applications."); *Sheikhalizadehjahed*

13    *v. Gaudiosi*, 2024 WL 4505648, at *7 (E.D. Cal. Oct. 16, 2024) ("Absent binding precedent, the

14    Court is persuaded that § 1202(b) imposes a non-discretionary duty to review and adjudicate visa

15    applications. The initial refusal of Plaintiff's father's visa application while placing it in

16    "administrative processing" does not dispense with this duty because there has been no final

17    adjudication. Any other conclusion about § 1202(b) and circumstances like these would allow

18    DOS to evade any judicial review of delayed adjudications by issuing pro forma refusals while

19    continuing to administratively process cases. The Court is unwilling to adopt statutory

20    interpretations which would produce absurd results.") (citation omitted). For the reasons stated

21    above, the Court concludes that Plaintiffs have sufficiently established that Defendants have not

22    met their mandatory duty to adjudicate Khosravi's visa application.

23    ORDER GRANTING DEFS.' MOTION TO DISMISS AND
DENYING PLS.' MOTION FOR SUMMARY JUDGMENT

24

25    - 10

1

**2.  Whether the 16-Month (and Counting) Delay Is Unreasonable**

2      Having determined that Defendants have a non-discretionary, mandatory duty to

3  adjudicate Khosravi's application, and that they have not fulfilled that duty, the Court next turns

4  to the question on the merits: to wit, whether the delay—to date, 16 months and counting—is

5  unreasonable.[6]  Defendants argue that Plaintiffs' allegations fail to support their claim of

6  unreasonableness and must be dismissed; Plaintiffs seek a ruling that the delay has been

7  unreasonable and that they are, as a matter of law, entitled to an order compelling Defendants to

8  adjudicate the application.

9      As noted above, the APA requires an administrative agency to adjudicate "a matter

10  presented to it" "within a reasonable time." 5 U.S.C. § 555(b). When determining whether an

11  agency's delay is unreasonable, courts in the Ninth Circuit consider six factors, articulated in

12  *Telecommunications Research and Action Center v. FCC*, 750 F.2d 70 (D.C. Cir. 1984)

13  ("*TRAC*"); *see In re Pesticide Action Network N. Am.*, 798 F.3d 809, 813 (9th Cir. 2015). These

14  considerations include:

15      (1) the time agencies take to make decisions must be governed by a rule of reason;

16      (2) where Congress has provided a timetable or other indication of the speed with
          which it expects the agency to proceed in the enabling statute, that statutory
17          scheme may supply content for this rule of reason;

18      (3) delays that might be reasonable in the sphere of economic regulation are less
          tolerable when human health and welfare are at stake;

19

20  _____

21  [6] Plaintiffs urge this Court to consider that they began the process of obtaining visas nearly four years ago, but
    "[c]ourts measure the period of delay from the last government action to the issuance of the opinion." *Nusrat v.
    Blinken*, 2022 WL 4103860, at *6 (D.D.C. Sept. 8, 2022). By this measurement, the length of time in this case has
22  been, so far, approximately 16 months.

23  ORDER GRANTING DEFS.' MOTION TO DISMISS AND
    DENYING PLS.' MOTION FOR SUMMARY JUDGMENT

24

25    - 11

(4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;

(5) the court should also take into account the nature and extent of the interests prejudiced by delay; and

(6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed. *Id*. (quoting *TRAC*, 750 F.2d at 80) (citations and quotations omitted).

Under this review, the Court concludes that Plaintiffs have failed to demonstrate that the delay in this case has been unreasonable. The first factor—"whether the time for agency action has been reasonable"—is considered the most important. *See Vaz v. Neal*, 33 F.4th 1131, 1138 (9th Cir. 2022) (citations omitted).[7] "In the immigration context, numerous district courts within the Ninth Circuit have found that lengthier delays" than the one at issue here "were not unreasonable." *Kapoor v. Blinken*, 2022 WL 181217, at *4 (N.D. Cal. Jan. 20, 2022) (noting that, with respect to applicants awaiting scheduling of interview for 18-20 months, "courts uniformly have found that delays as long or longer than those in this case were not unreasonable"); *see also*

---

[7] While under some circumstances the second factor may provide useful context in evaluating the first, it does not do so in this case; as numerous courts have recognized, Congress has not prescribed a timetable for processing immigrant visa adjudications, and instead "has given the agencies wide discretion in the area of immigration processing." *Skalka v. Kelly*, 246 F. Supp. 3d 147, 153-54 (D.D.C. 2017). "Absent a congressionally supplied yardstick, courts typically turn to case law as a guide." *Arab v. Blinken*, 600 F. Supp. 3d 59, 70 (D.D.C. 2022) (citations and internal quotation marks omitted).

Plaintiffs contend that Congress supplied a timetable in 8 U.S.C. § 1571, which states that "[i]t is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application." 8 U.S.C. § 1571(b). The Court rejects Plaintiffs' attempt to rely on this provision. As a sister court recently observed, "this argument is unavailing both because the Ninth Circuit has interpreted similar statutory 'sense of Congress' language to be non-binding legislative dicta, and because Plaintiffs have failed to identify any authority suggesting this provision applies to the State Department's processing of visa applications, as opposed to USCIS's processing of immigrant benefit applications." *Mahonak*, 2025 WL 449044, at *16 (cleaned up, citing *Mohsenzadeh v. Kelly*, 276 F. Supp. 3d 1007, 1014 (S.D. Cal. 2017); *Yang v. Cal. Dep't of Soc. Serv.*, 183 F.3d 953, 961 (9th Cir. 1999); *Arab*, 600 F. Supp. 3d at 69-70.)

ORDER GRANTING DEFS.' MOTION TO DISMISS AND
DENYING PLS.' MOTION FOR SUMMARY JUDGMENT

- 12

*Arab*, 600 F. Supp. 3d at 70 (summarizing cases finding immigration delays of five to seven years are unreasonable and those between three and five years are often not). More specifically, and critically for purposes of Defendants' motion, numerous courts have found comparable allegations of delay to be insufficient to state a claim at the motion-to-dismiss stage. *See, e.g., Infracost Inc. v. Blinken*, 732 F. Supp. 3d 1240, 1254 (S.D. Cal. 2024) ("This fourteen-month administrative-processing-related delay is comparable to those considered insufficient to state a plausible claim for relief in analogous cases."); *Barazandeh v. U.S. Dep't of State*, 2024 WL 341166, at *8 (D.D.C. Jan. 30, 2024) (noting "district courts have generally found that immigration delays of two to three years are reasonable" and finding twenty-month delay due to administrative processing reasonable); *Isse v. Whitman*, 2023 WL 4174357, at *6 (D.D.C. June 26, 2023) (dismissing under Federal Rule 12(b)(6) visa applicant's claim based on 40-month delay due to administrative processing); *Nusrat*, 2022 WL 4103860, at *6 (finding 32-month delay due to administrative processing reasonable and dismissing claim). The first *TRAC* factor weighs heavily in favor of Defendants.

"The third and fifth factors require the [c]ourt to assess whether human health and welfare are at stake and whether the nature and extent of those interests are prejudiced by the delay." *Ghalambor v. Blinken*, 2024 WL 653377, at *6 (C.D. Cal. Feb. 1, 2024). Courts typically consider these factors together. *See, e.g., Najafi v. Pompeo*, 2019 WL 6612222, at *7 (N.D. Cal. Dec. 5, 2019); *Islam v. Heinauer*, 32 F. Supp. 3d 1063, 1073 (N.D. Cal. 2014). The Court has reviewed Plaintiffs' allegations and acknowledges the hardship that Plaintiffs and their family are experiencing due to the delay in processing Khosravi's visa. *See, e.g.*, Am. Compl., ¶ 79 (Plaintiffs "are suffering from extreme emotional and psychological harm due to the uncertainty

ORDER GRANTING DEFS.' MOTION TO DISMISS AND
DENYING PLS.' MOTION FOR SUMMARY JUDGMENT

of their family's future."). But hardships such as those that Plaintiffs describe in general and

conclusory terms—while far from trivial—are nearly always presented by delays in processing

immediate-family visa applications. This factor weighs in Plaintiffs' favor, though not enough to

tip the balance in relation to the other *TRAC* factors.

Finally, the fourth *TRAC* factor heavily favors Defendants.[8] Under this factor, the court

considers "whether compelling the agency to act would detract from its higher or competing

priorities." *Vaz*, 33 F.4th at 1138. Courts have "refused to grant relief, even though all the other

factors considered in *TRAC* favored it, where a judicial order putting the petitioner at the head of

the queue would simply move all others back one space and produce no net gain." *Mashpee*

*Wampanoag Tribal Council*, 336 F.3d at 1102 (cleaned up). In this case, an order requiring

Defendants to adjudicate Khosravi's application would both prioritize him at the expense of

similarly situated applicants, and interfere with Defendants' "discretion in prioritizing its

activities and allocating its resources." *Vaz*, 33 F.4th at 1138 (citation omitted). Plaintiffs argue

that there is no evidence that there is a "queue," or that applications are necessarily processed in

the order they are received. Nevertheless, "granting the relief Plaintiff[s] seek[ ] would [still] push

others, some of whom may not have the resources to commence litigation, further back in the

---

[8] The sixth factor is "not really a 'factor,' but merely a confirmation that agency delay need not be intentional to be unreasonable." *Feng v. Beers*, 2014 WL 1028371, at *5 (E.D. Cal. Mar. 14, 2014). Plaintiffs argue, without evidence, that this factor favors them because Defendants have made no attempt to hire more staff to process applications more expeditiously. There is no evidence (or allegation) that Defendants have the ability to hire more staff, that more staff would result in the faster processing of applications generally, or that faster processing of applications would have any effect on the adjudication of Khosravi's application specifically. The sixth factor favors neither side. *R. v. U.S. Citizenship & Immigr. Servs.*, 2023 WL 9197564, at *5 (C.D. Cal. Dec. 6, 2023) (citation omitted) ("In absence of any allegations of impropriety, the sixth TRAC factor typically is either neutral or weighs in the government's favor.").

ORDER GRANTING DEFS.' MOTION TO DISMISS AND
DENYING PLS.' MOTION FOR SUMMARY JUDGMENT

- 14

1    process." *Aghchay v. U.S. Dep't of State*, 2022 WL 19569516, at *3 (C.D. Cal. Dec. 20, 2022).

2    Furthermore, where, as here, "[t]he agency is in a unique—and authoritative—position to view its

3    projects as a whole, estimate the prospects for each, and allocate its resources in the optimal

4    way," there is "no basis for reordering agency priorities." *In re Barr Lab'ys*, 930 F.2d at 76; *see*

5    *also Arab*, 600 F. Supp. 3d at 71 ("[D]eference must be given to the State Department's priority-

6    setting and resource-allocation decisions.") (collecting cases).

7           Under the foregoing *TRAC* analysis, the Court concludes that Plaintiffs have failed to

8    allege that the delay they have experienced in this case is unreasonable. The Court again

9    acknowledges that other courts have come to a different conclusion, finding that questions of

10   unreasonable delay may be fact-intensive and therefore, not appropriate for disposition at the

11   motion-to-dismiss stage. *See, e.g.*, *Barrios Garcia v. U.S. Dep't of Homeland Sec.*, 25 F.4th 430,

12   451 (6th Cir. 2022) ("Resolution of a claim of unreasonable delay is ordinarily a complicated and

13   nuanced task requiring consideration of the particular facts and circumstances before the court.").

14   In this case, however, Plaintiffs have not argued that discovery is necessary to further develop a

15   record that might support their claim of unreasonableness. Instead, they have moved the Court to

16   find on the sparse record before it that, as a matter of law, the 16-month delay at issue is

17   unreasonable. The Court declines to do so and finds that, to the contrary, the *TRAC* factors weigh

18   heavily in favor of finding that the length of delay, to date, is not unreasonable.

19          This dismissal is without leave to amend, which Plaintiffs have neither requested nor

20   demonstrated they are entitled to; but it is without prejudice. Should later circumstances develop

21   that support a finding of unreasonable delay, the Court is prepared to direct Defendants to

22   adjudicate Khosravi's application, especially considering his advanced age. *See, e.g. Infracost*

23   ORDER GRANTING DEFS.' MOTION TO DISMISS AND
     DENYING PLS.' MOTION FOR SUMMARY JUDGMENT

24

25    - 15

*Inc. v. Blinken*, 732 F. Supp. 3d 1240, 1258 (S.D. Cal. 2024) (dismissing unreasonable delay claims "WITHOUT LEAVE TO AMEND," but "WITHOUT PREJUDICE to refiling should later circumstances demonstrate an unreasonable delay"); *Aminzadeh*, 2024 WL 3811153, at *9 (same); *Shahijani v. Laitinen*, 2023 WL 6889774, at *6 (C.D. Cal. Oct. 6, 2023) (same).

## IV.    CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' Motion to Dismiss and DENIES Plaintiffs' Motion for Summary Judgment. This matter is DISMISSED without leave to amend but without prejudice, as outlined above.

DATED this 14th day of March, 2025.

Barbara Jacobs Rothstein
U.S. District Court Judge

ORDER GRANTING DEFS.' MOTION TO DISMISS AND
DENYING PLS.' MOTION FOR SUMMARY JUDGMENT

- 16